Michael E. Cindrich (SBN 243731)
Robert M. Crissman (SBN 292299)
**LAW OFFICES OF MICHAEL E. CINDRICH, APC**
225 Broadway, Suite 2100
San Diego, California 92101
Telephone: (619) 262-2500
Facsimile: (619) 819-7342

Attorneys for Plaintiff DSPO - CORONA LLC

**FILED**

Superior Court of California
County of Riverside

**12/21/2021**
**V. Lupercio**

Electronically Filed

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

| | |
|---|---|
| DSPO - CORONA LLC, a limited liability company;<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF CORONA, a municipal corporation<br><br>                    Defendant. | Case No.:   **CVRI2105786**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**Department 1** |

## I.    INTRODUCTION

Plaintiff DSPO - CORONA LLC (hereinafter "DSPO" and/or "PLAINTIFF") brings this action against Defendant CITY OF CORONA ("CITY" and/or "DEFENDANT"). DSPO seeks a declaration that that CITY's denial of Plaintiff's application was improper and for the court to order an injunction halting the CITY's licensing process until the serious inconsistencies with the City zoning and the General Plan are resolved.

DSPO hereby alleges as follows:

1.    At all times relevant to this Complaint, Plaintiff DSPO - CORONA LLC is and has been a limited liability company, in good standing, and authorized to do business in the State of California.

2.    At all times relevant to this Complaint, DEFENDANT CITY OF CORONA is and has been a municipal corporation in the State of California.

## II.    BACKGROUND

3.    On or about May 19, 2021, Plaintiff filed for a cannabis retailer permit ("Application")

Complaint for Declaratory and Injunctive Relief

1   with the City of Corona's Planning Department and the application was deemed complete at the time of

2   submission and allowed to move on to the second stage of review.

3           4.      During the second stage of review, Plaintiff was told by Jay Eastman, the Planning

4   Manager, that the Plaintiff's desired location violated a sensitive use buffer zone. Specifically, that it

5   was within 1,000 feet from a residentially zoned area.

6           5.      Plaintiff disagrees with that contention since both the desired location, and the apparent

7   residentially zoned portion, are in an area of the City's General Plan that allows for industrial zones only

8   and thus would preclude a residential zone to exist in that specific area.

9           6.      After discussions with the City about the zoning and permit issue, Plaintiff was not

10  permitted to move forward to the next round of review in the cannabis retailer application phase and its

11  application was denied. (**See Exhibit 1**)

12          7.      The issue at hand is whether the General Plan's designation of the area where the apparent

13  residential zone exists violates both State law and the law of Corona. This violation would preclude this

14  extremely small residential zone from being codified as residential. This preclusion, as a result of the

15  legal violation, would allow the Plaintiffs desired location to satisfy the requirements of Corona

16  Municipal Code Section 5.36.070.

17  **III.    FACTS**

18          8.      The City of Corona has designated through its General Plan certain areas within the City's

19  jurisdictional boundary which are a statement of the community's vision for future development. Per

20  State Law, which has been adopted by the City of Corona (**See Exhibit 2**), the zoning and land uses that

21  are allowed within the area designated industrial under the General Plan must be consistent with industrial

22  use. (Garat v. City of Riverside., 2 Cal.App.4th 259, 300 (1991), *Las Virgenes Homeowners Assoc. v.*

23  *County of Los Angeles,* 177 Cal. App. 3d 312 (1987), Napa Citizens for Honest Government v. Napa

24  County Board of Supervisors, 91 Cal. App. 4th 342 (2001).

25          9.      Per the Corona Municipal Code Section 5.36.070(A)(1) a cannabis retailer must comply

26  with the following sensitive use buffer requirements:

27          (A)    **Storefront retailers and storefront retail microbusinesses.** No storefront
                   retailer or storefront retail microbusiness shall be located within a 1,000-foot radius,
28                 measured from the public entrance of the retailer, of the exterior boundary of a
                   property containing any of the following that are in existence at the time the initial
                   commercial cannabis permit for the storefront retailer or storefront retail

– 2 –

microbusiness is issued:

    (1)  Public or private school providing instruction in kindergarten or any of grades 1 to 12;

    (2)  Day care center;

    (3)  Public or private park located within the city's jurisdictional boundaries; or

    (4)  Residential zone located within the city's jurisdictional boundaries.

10.    The City's Notice of Decision finds that there are three residentially zoned lots within 1,000 feet from the proposed location of the Project, at Assessor's Parcel Nos. 118-150-011, 118-150-012 and 118-150-013. Assessor's Parcel Nos. 118-150-011, 118-150-012 and 118-150-013 are each zoned R1-7.2 (Single Family Residential).

11.    All three lots maintain a land use designation of LI, or Light Industrial. None of the lots are improved with residential uses.

12.    The General Plan is a city's constitution for all future land use and subsidiary enactments. *Denham, LLC v. City of Richmond* (2019) 41 Cal.App.5th 340, 353. Once the City adopts its General Plan, all zoning ordinances must be consistent with that general plan. *Government Code* §65860(a)(city zoningordinances shall be consistent with the General Plan); *Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 536.

13.    A zoning ordinance that conflicts with a general plan is invalid at the time it is passed. *Lesher Communications*, 52 Cal.3d at 545; *see also Merritt v. City of Pleasanton* (2001) 89 Cal.App.4th 1032, 1036 (it is well-settled that any zoning decision, whether made by the local governing body or by the local electorate must be consistent with the relevant general plan, and if it is not consistent, it is invalid when passed).

14.    It is unnecessary for the Court to invalidate the ordinance, as the preemptive effect of the controlling state statute, Planning and Zoning Law, invalidates the ordinance. *Id.* at 544 (emphasis added); *see also Building Industry Association v. City of Oceanside* (1994) 27 Cal.App.4th 744, 762.

15.    The issue in this case derives from Subsection 4 of Corona Municipal Code Section 5.36.070(A)(1), which requires that a cannabis retailer be 1,000 feet from a residential zone. The General Plan designates the area where the Plaintiff has applied to conduct cannabis retail sales at 322 N. Garfield Ave. Corona, CA 92882 ("Premises") as Light Industrial.

16.    Additionally, all of the areas within 1,000 feet of the public entrance at the Premises are designated Light Industrial. (**See Exhibit 3**) Therefore, State and City and law require that all zoning within these areas be consistent with industrial uses. Residential zones and industrial zones have been

long held inconsistent.

17.     In this case, the only one of the four sensitive uses that involves zoning is the residential item found in the fourth use. Analyzing this buffer zone requires looking into a general plan to see what is allowed in the area in which you desire to operate.

18.     The other three require pinning them on a map and then calculating distance because they are not found in a general plan or zoning map. The requirement of consistency provides to a potential business developer the guidelines needed to assess these issues.

19.     The Plaintiff did exactly this when they reviewed the General Plan, and it clearly demonstrates that no residential zoning is allowed where this three-parcel residential zone exist. It is the City's duty to comply with State Planning and Zoning Law requirements to maintain a zoning ordinance consistent with the General Plan.

**A) Serious Inconsistencies with the City Zoning.**

20.     After analyzing the General Plan, Plaintiff knew that residential could not exist within 1,000 feet of the Premises because it was prohibited by City and State Law. After applying for a Cannabis Retailers Permit with the City of Corona, Plaintiff was informed that it was within 1,000 feet of a residential zone.

21.     After further investigation, Plaintiff concluded that the City's Zoning Map was outdated because the residential zone contained the same set of buildings that the Premises exists on.

22.     These homes were designated industrial when the General Plan was created in 1955 and today it says they are still industrial. (**See Exhibit 4**)

23.     Many of them have been redeveloped as industrial uses because of the General Plan designation of Industrial. Those that remain are non-conforming uses which makes them a residence but not a residential zoned area.

24.     Additionally, the Zoning Map showed an Open Space zoning designation next to the three small parcels designated residential zone which are in question. Indeed, that is not Open Space because there are two large industrial buildings on the parcel designated Open Space. (**See Exhibit 5**)

25.     This seemed to further support Plaintiff's conclusion that the Zoning Map was outdated because the developer that built those two industrial buildings must have filed for a change of zone. This change of zone should have then led to the Zoning Map being updated to reflect the new zoning.

26.     Last, the Specific Plans within the General Plan that contain the Premises, and the illegal residential zone, state clearly that residential zones are prohibited. (**See Exhibit 6**)

27.     Whether or not these illegally zoned parcels predate the General Plan or even show up in old City Zoning Maps is a moot point because both the first ever City General Plan and the current City General Plan clearly state that no residential zoning is allowed due to the inconsistency it would create.

28.     With these arguments at hand, Plaintiff plead with Jay Eastman that not only would these small parcels surrounded by Industrial zoning be illegal due to being inconsistent with the General Plan, but it seemed that the City had outdated zoning that needed to be updated.

29.     Jay Eastman agreed with Plaintiff that those three small residentially zoned parcels are inconsistent with the General Plan (**See Exhibit 7**).  This means by logical inference the residentially zoned parcels are illegal and would be precluded from being designated as a residential zone. However, Jay Eastman, with the support of the Planning Department, still analyzed this issue with the narrow sense that regardless of the residentially zoned parcels being illegal, they are there, and the Premises violates CMC 5.36.070.

30.     This narrow analysis may be all their authority allows, but it is not in tune with legal analysis of pre-emption and the proper legal analysis of law to fact.

31.     The General Plan clearly designates the residentially zoned parcels as Industrial. Residential zoning and industrial zoning have long been considered inconsistent. These principals date all the way back to the very first zoning laws in the 19th Century where a slaughterhouse was prohibited from being in a residential zone.

32.     Therefore, by State and Corona law, the residentially zoned parcels that are surrounded by a sea of industrial zoning and uses, are illegal. Since the zoning of the parcels is illegal, the Premises does not violate CMC 5.36.070. It is the job of the City to change the zones of parcels within a general plan to be consistent.

## FIRST CAUSE OF ACTION

Violation of Government Code §65860 regarding the serious inconsistencies between the City zoning and the General Plan

(DSPO against CITY)

33.     DSPO re-alleges and incorporates by reference paragraphs 1-32 as if they were set forth here in full.

34.     Once the City adopts its General Plan, all zoning ordinances must be consistent with that general plan. Government Code §65860(a).

35.     The City of Corona General Plan clearly demonstrates that no residential zoning is allowed where the three-parcel residential zone exists. It is the City's duty to comply with State Planning and Zoning Law requirements to maintain a zoning ordinance consistent with the General Plan.

36.     Therefore, by State and Corona law, the residentially zoned parcels that are surrounded by industrial zoning and uses, are illegal.

37.     Since the zoning of the parcels is illegal, the premises for Plaintiff's application does not violate CMC 5.36.070, and it is City's duty and responsibility to change the zoning within a general plan to be consistent.

38.     There is an actual controversy between DSPO and the City because DSPO application should not have been denied because of the City's inconsistent zoning that is in clear violation of the General Plan.

39.     Moreover, DSPO stands to suffer irreparable injury if City is permitted to enforce the illegal zoning because DSPO will be prevented from successfully applying for registration as a cannabis dispensary.

<strong><u>PRAYER FOR RELIEF</u></strong>

Whereupon, Plaintiff prays for:

1) A declaration that that City's denial of Plaintiff's application was improper and for the court to order an injunction halting the City's licensing process until the serious inconsistencies with the City zoning and the General Plan are resolved;

2) Damages to be proven at trial;

3) Costs of suit;

4) Reasonable attorney's fees; and

5) Such other relief as the Court may deem appropriate.

Date: December 17, 2021          **LAW OFFICE OF MICHAEL E. CINDRICH, APC.**

                                                    _____
                                                    Michael E. Cindrich
                                                    Attorneys for Plaintiff

– 6 –

**EXHIBIT 1**



**PLANNING & DEVELOPMENT DEPARTMENT**
Planning Division
*"Promoting and Sustaining Quality Development"*

400 S. Vicentia Avenue, Corona, California 92882
Phone: (951) 736-2434
www.CoronaCA.gov

August 25, 2021

Pamela Nola
DSPO – Corona LLC (d.b.a. DSPO)
322 N. Garfield Avenue
Corona, CA 92882

**RE:   CCP2021-00054 (DSPO – Corona LLC) – NOTICE OF DECISION**

Ms. Nola,

The City of Corona Commercial Cannabis Permit application review process is comprised of the following three distinct phases:
- Phase 1 – Preliminary Review
  - Application Clearance
  - Merit-Based Review
- Phase 2 – Provisional Review
- Phase 3 – Final Review

This letter serves to inform you that on August 9, 2021 the City of Corona concluded its Application Clearance review of the above referenced application and, pursuant to Section IV(B)(2) of the Rules and Regulations for Permitting Commercial Cannabis Business as adopted by Resolution No. 2021-022 ("Rules & Regulations"), Application Clearance is hereby denied.

<u>Reason for Determination</u>

Section IV(B)(2) of the Rules & Regulations states that the City Manager or his or her designee shall grant Application Clearance unless he makes <u>any</u> of the twelve findings listed in Section IV(B)(2).  As the City Manager's designee, the Planning Division reviewed the above referenced application and determined that the proposed location of the storefront cannabis business, identified in the application as 322 N. Garfield Avenue ("Proposed Location"), does not comply with the separation requirements set forth in Corona Municipal Code ("CMC") § 5.36.070(A).  Specifically, the Proposed Location is within the 1,000 feet separation requirement from property zoned "R-1-7.2", which is a residential zone pursuant to CMC § 5.36.020.   As a result, the City has determined that, at minimum, the following finding is made with respect to the above referenced application (emphasis added):

> "k.     <u>Zoning Non-Compliance.</u> The premises are located in a zoning district where commercial cannabis businesses are not permitted, pursuant to Title 17 of the CMC, **or that do not satisfy the separation requirements set forth in CMC § 5.36.070**. If the applicant for a storefront retailer and/or a storefront retail microbusiness identifies more than one potential premises in the application, any potential premises that are not located in a zoning

district where commercial cannabis businesses are permitted pursuant to Title 17 of the CMC, or that do not satisfy the separation requirements set forth in CMC § 5.36.070 will not be considered or reviewed as part of the merit-based evaluation process set forth in Section IV(B)(4) below."

Since the application you submitted prior to the application deadline identified a single proposed location, and that location does not satisfy the separation requirements set forth in CMC § 5.36.070, your application will not advance to the merit-based review process.

For your convenience, the following CMC sections are applicable to this finding:

    5.36.070        City permit – Separation Requirements

        (A) Storefront retailers and storefront retail micro businesses. No storefront retailer or storefront retail microbusiness shall be located within a 1,000-foot radius, measured from the public entrance of the retailer, of the exterior boundary of a property containing any of the following that are in existence at the time the initial commercial cannabis permit for the storefront retailer or storefront retail microbusiness is issued:

                (1) Public or private school providing instruction m kindergarten or any of grades 1 to 12;
                (2) Day care center;
                (3) Public or private park located within the city's jurisdictional boundaries; or
                (4) Residential zone located within the city's jurisdictional boundaries.

    5.36.020        Definitions

        "Residential zone" means an A, A-14.4, R-1A, R-20.0, R-12.0, R-1-9.6, R-1.8.4, R-1-7.2, R-1-14.4, R-2, R-3, R-3-C, R-G or MP zone, a residential land use adopted by a specific plan, or an equivalent residential zone, in each case within which residential uses are allowed by right. The term "residential zone" does not include mixed-use zones established by a specific plan that permit residential uses.

To provide clarity of the City's finding, I have attached to this letter screenshot images showing that the Proposed Location falls within 1,000 feet of property zoned "R-1-7.2 Single Family Residential Zone". The first image is from the City's GIS system, which is publicly accessible from the City of Corona Planning Division's website. The second image is from Google Maps, which is also publicly accessible, and shows measurements between the residential zoned properties and a point on the Proposed Location that is farthest from the residential zoned properties.

Effective Date

On August 9, 2021, the City completed its review and investigation of the above referenced application as submitted prior to the application deadline, as well as information received from the California Department of Justice. The decision to deny Application Clearance for the above referenced application occurred on August 10, 2021; however, the denial is effective as of the date of this letter, August 25, 2021 ("Effective Date").

Right of Appeal

You have the right to appeal this decision pursuant to CMC Chapter 1.09. CMC § 1.09.060(A) provides:

> "…any person objecting to the administrative decision of a city official may, within ten (10) days, appeal by filing a written Notice of Appeal ("Notice") with the City Clerk, stating the grounds for why such decision is not proper and thus being contested. Any appeal shall be limited to such written grounds. Payment of the relevant fee for appeal, which may be established by City Council resolution, must be submitted with the Notice. Any hearing fee shall not exceed the reasonable cost to the City of a hearing, and shall include one-half of the fees and costs charged by the hearing officer, as provided for in Section 1.09.040."

The City's denial of Application Clearance for the above referenced application shall be final if an appeal is not filed within ten (10) days of the Effective Date.

Refund of Deposit

Applications that are not granted Application Clearance review do not advance to the merit-based review process and will not be granted Preliminary Approval. Applications that do not advance to the merit-based review process will be refunded the $4,500 deposit the City collected to cover costs associated with the merit-based review process.

Minor Errors & Omissions

Section IV(B)(2) of the Rules & Regulations states that the City Manager or his or her designee shall grant Application Clearance unless he makes any of the twelve findings listed in Section IV(B)(2). One of the findings for denial is as follows:

> "b.    Application Disqualification. The application is incomplete, submitted late, or is otherwise not responsive to the requirements of CMC Chapter 5.36 or these Rules and Regulations; provided that if the application is incomplete or non-responsive due to a minor omission or error, the applicant shall be permitted up to five (5) days after notification to cure such minor omission or error."

During the review of the submitted application, the Planning Division identified errors or omissions that, in staff's opinion, are minor. Should the denial of Application Clearance be appealed, and the denial reversed by the Hearing Officer, you would have five (5) city business days from the date of the Hearing Officer's decision to address the items listed in Attachment 3. If you disagree with any of the items identified within Attachment 3, Minor Omissions and Errors Memo, it is recommended that those items be included in any appeal of the Application Clearance denial.

Review of Plans and Compliance with Codes

Please be aware that during staff's review of the above referenced application, a few concerns were identified with the concept plans submitted. Although these concerns are not grounds for denying Application Clearance, pursuant to Section IV(B)(2)), they could prohibit the granting of Final Approval if not resolved during or before Building Permit plan check (reference Section VI(A)(3) of Resolution 2021-022).

Staff comments regarding the submitted concept plans are summarized in Attachment 4, which is solely provided to you as a courtesy. Staff comments in Attachment 4 reflect initial feedback and

are not a final determination, and the comments are not grounds for appeal. A comprehensive list of detailed comments/corrections would be provided after a Building Permit application and a full set of construction plans are submitted.

Please note that a Building Permit application for the cannabis business would be reviewed only if Application Clearance denial is appealed, the Hearing Officer reverses the City Manager's determination, and the independent merit-based review process ranks your application as one of the top twelve storefront applications submitted.

Sincerely,

**Jay Eastman, AICP**
Planning Manager / City Manager's Designee for Clearance Review

Attachments:
1. Map – Measurement to R-1-7.2 Zone, City's GIS Software
2. Map – Measurement to R-1-7.2 Properties, Google Map
3. Minor Omissions and Errors in Application Packet
4. Memo to File – Preliminary Review of Concept Plans/Location

CC:    Jamie Raymond, City Attorney's Office
       Roger Bradley, City Manager's Office
       Joanne Coletta, Community Development Department
       File – CCP21-00054

Email: Pamela Nola – Pam@bnataxcenter.com



Using the City's GIS system, the distance measured from the farthest corner of the Proposed Location to properties zoned R-1-7.2 (Single Family Residential) is less than the minimum separation of 1,000 feet. As such, the Proposed Location cannot accommodate a storefront cannabis business, pursuant to the criteria in CMC Sec. 5.36.070.



Distance measured from the farthest corner of the Proposed Location to the properties zoned "R-1-7.2 (Single Family Residential)", using Google Maps. The entire site where the cannabis business is proposed is within 1,000 feet of the residential zone.



**PLANNING & DEVELOPMENT DEPARTMENT
MEMORANDUM**

**DETERMINATION DATE:**    **August 10, 2021**

**EFFECTIVE DATE:**    **August 25, 2021**

**TO:**    **File CCP21-00054**

**FROM:**    **Jay Eastman, Planning Manager**

**SUBJECT:**    **Minor Omissions and Errors in Application Packet**

This memo serves to identify minor omissions and errors that were identified after reviewing the storefront commercial cannabis permit application submitted by DSPO – Corona LLC, dba DSPO, and to identify acceptable cures to the minor omissions and errors, pursuant to Section IV(b)(2)(b) of the Rules and Regulations for Permitting Commercial Cannabis Business (CMC Chapter 5.36) established by City Council Resolution 2021-022.

- **Master Application Form:** Section 13 (Property Information) identifies one location for the proposed cannabis business, which is 322 N. Garfield Avenue.  Section 13 states that the Zone is "2", which is incorrect.  Additionally, the listed Assessor Parcel Number (APN) is "181-140-037", which incorrectly transposed the first three digits.  Additionally, City and County Assessor records indicate that there are two parcels, with two separate APN's.
  **Cure:** City staff has noted the correct zoning and parcel numbers on the Master Application Form.  The correct zoning is "M-1".  Based on the address, property owner name, and plans submitted, the correct APNs are 118-140-037 & 118-140-038.  No action by the applicant is necessary unless you disagree with this notation/correction.  If you disagree, provide an explanation and/or a revised page 5 of the Master Application Form within five city business days.

- **Master Application Form:** Page 3 of the Master Application Form requires applicants to attach formation documents (e.g., articles of incorporation, operating agreements, partnership agreements, etc.).  The business formation documents of DSPO – Corona LLC are incomplete.
  **Cure:** Within 5 business days submit all missing business formation documents for DSPO – Corona LLC.

- **Form A-1 and Form A-2:**  The second page of Form A-1 and A-2 were not included in the application packet.
  **Cure:** City staff has added a blank Form A-1, page 2, and a blank Form A-2, page 2, to the application packet.  No action by the applicant is required.

CCP21-00054 (DSPO – Corona LLC)                          RE: Minor Omissions & Errors in Application Packet
Page 2

- **Form A-2:** Based on the title of the employee listed on Form A-2 for DSPO – Corona LLC and the definition of "Manager" in Corona Municipal Code (CMC) § 5.36.020, it appears that the employee (Nicole Herron) may have management authority and should be listed in Form A-1, instead of Form A-2.

  > 5.36.020 Definitions
  > "Manager" means any individual person(s) designated by a commercial cannabis business to manage day-to-day operations of the commercial cannabis business or any person acting with apparent management authority. Evidence of management authority includes, but is not limited to, evidence that the person has the power to direct, supervise, or hire and dismiss employees or volunteers, control hours of operation, create policy rules, or purchase supplies.

  **Cure:** If the employee listed on Form A-2 is a manager within the meaning of CMC § 5.36.020, submit, within 5 city business days, revised Forms A-1 and A-2, adding Nicole Herron to Form A-1, and removing her name from Form A-2.  Alternatively, if the applicant believes Ms. Herron is correctly listed on Form A-2, then the applicant should clarify in writing, within 5 city business days, how the employee does not meet the criteria of "Manager".  Due to established page limits and the fact that the application filing period has ended, any provided clarifications shall not be considered part of the formal application packet and will not be considered during the merit-based review process.

- **Form B:** Form B requires applicants to attach a list of cannabis licenses currently held by any of the business owners.  Although the application submitted for DSPO-Corona LLC included a general description of some of the business owners' cannabis experience, the application did not include the required list of cannabis licenses.
  **Cure:** Within 5 businesses days, submit a list of cannabis licenses currently held by any of the business owners, per the requirements on Form B ("Owner" can include being the member of the board of directors of a nonprofit license holder, chief executive officer of a nonprofit or business entity license holder, ownership of 20% or more of a license holder, or participation in the direction, control, or management of a license holder). The list shall include locations, license types, license numbers, licensing authority, and issuance date for each license.  Submit copies of permits or licenses not already provided.  If the business owners do not hold any cannabis licenses, then provide a written statement indicating that the owners do not hold any licenses.

- **Form B:** Copies of cannabis cultivation licenses are too small (not legible).
  **Cure:** Within 5 business days, submit enlarged versions of the cultivation licenses.  Copies of licenses attached to Form B do not count toward page limits.

- **Form D:** Form D was not completed.  Form D either needs to identify any criminal convictions of owners, officers, and managers or the box at the bottom of the form needs to be checked to indicate that there are no criminal convictions to list.  Form D was updated on April 15, 2021 to add the check box at the bottom of the form.  It appears that a prior version of Form D was submitted with your application.
  **Cure:** Within 5 business days, submit six (6) copies of the completed Form D.  Form D is available on the City's Commercial Cannabis Portal.
  (https://www.coronaca.gov/government/commercial-cannabis-portal)

CCP21-00054 (DSPO – Corona LLC)                                    RE: Minor Omissions & Errors in Application Packet
Page 3

- **Form H:** Form H was not completed.  Since the business formation documents of DSPO – Corona LLC were not provided, as indicated above, it is not clear whether there are any persons or business entities that have a financial interest in DSPO – Corona LLC that should be listed on Form H.

  **Cure:** If there are any business entities that have a financial interest in the applicant business (DSPO – Corona LLC), list them on Form H and resubmit the Form within 5 city business days.  Include the business entity identification number from the Secretary of State for each business listed on the form, as well as the CEO and persons with ownership interest in said business entity.  If there are no business entities with a financial interest in the applicant business, then provide a written statement within 5 business days clarifying that all business ownership interest is reflected on Form A-1, A-2 & A-3 of the application.

- **Form I:**  Form I requires documentation signed by the property owner stating that the site is available to the tenant for use as a storefront commercial cannabis business.  A lease agreement signed by the property owner was attached to the Master Application form, and that agreement clearly indicates that the use is for a storefront cannabis business.  However, the agreement submitted does not include the required "wet" or "original" signatures, as specified in the Frequently Asked Questions posted on the City's cannabis portal. Additionally, while the address reflects 322 N. Garfield Avenue, the APNs included in the lease agreement are incorrect.

  **Cure:** Within five business days, submit an original lease agreement between the owner of the property at 322 N. Garfield Avenue and applicant, with wet signatures and correct assessor parcel numbers (APNs 118-140-037 & 118-140-38) (1 original and 5 copies).  Alternatively, within 5 business days, submit a property owner affidavit with wet signature (1 original and 5 copies), stating that the property is available to the applicant for the use of a storefront cannabis business.

- **Form I:**  The APN listed on Form I is "118-140-022", which is incorrect based on the address, property owner name, and plans submitted as part of the application.  Additionally, City and County Assessor records indicate that the property is comprised of two parcels.
  **Cure:** City staff has noted the correct parcel numbers on Form I.  These parcel numbers (APNs) are 118-140-037 & 118-140-038.  No action by the applicant is necessary unless you disagree with this notation/correction.  If you disagree, provide a revised Form I within five city business days reflecting the APNs you believe are associated with the property at 322 N. Garfield Avenue.

- **Form I:**  Sheet A0.1 is missing information necessary to determine if the site can comply with City codes (e.g., dimensions, parking, landscaping, etc.).  Sheet A0.1 is also difficult to read.
  **Cure:**  Within 5 city business days, submit a larger scale version of the site plan (maximum allowed page size is "11x17").  The plan must show required parking spaces and include dimensions of the site, buildings, setbacks to property lines, distance between buildings, drive lane widths, parking spaces, driveway widths, etc.

- **Page Limit:**    Application exceeds the allowable page count of 75 text pages and 25 image pages (staff counted 84 text pages and 17 image pages).
  **Cure:**  Within 5 city business days the applicant shall provide direction to City staff, in writing, as to which 9 text pages are to be removed from the application.



**PLANNING & DEVELOPMENT DEPARTMENT**
**MEMORANDUM**

**DATE:**      **August 24, 2021**

**TO:**         **File CCP21-00054**

**FROM:**     **Jay Eastman, Planning Manager**

**SUBJECT:**   **Preliminary Review of Concept Plans/Location**

This memo establishes file notes regarding the concept plans submitted by DSPO – Corona LLC (dba DSPO), for a retail commercial cannabis permit application at 322 N. Garfield Avenue.

Items identified in this memorandum would need to be consider before or during "Phase 3" of the cannabis application review process, as stipulated by Section IV(A)(3) of the Rules and Regulations for Permitting Commercial Cannabis Business, adopted by Resolution No. 2021-022 ("Rules & Regulations").

The review of plans submitted in the application packet was conducted by staff solely for the purpose of identifying major issues or constraints that may be of concern to the City or applicant, and to identify any obvious public improvements that might be warranted.  Feedback provided by staff is purely cursory and may require further investigation or verification.

The proposal's concept was discussed at a virtual staff meeting (MS Teams) held on August 9, 2021.  Comments received at the meeting, or because of feedback from the meeting, include the following:

*Planning Division:*
1.     The application submitted for the Commercial Cannabis Permit (CCP) does not show any on-site parking.  All uses on the site will need to be adequately parked according to the Corona Municipal Code.  The inability to provide adequate on-site parking may result in forfeiture of the CCP.
2.     Revisions to the site plan and building exterior shall be subject to all applicable development processes and applications specified by Corona Municipal Code (CMC) Title 17 – Zoning, such as but no limited to Development Plan Review (DPR), Precise Plan (PP) applications, etc.
3.     Records indicate that the property is comprised of two County Assessor parcels.  This typically indicates that there are two separate legal properties.  The existing structure, which is proposed to accommodate the proposed cannabis business, crosses over the parcels.  A building cannot cross over a property line.  Prior to issuance of building permits, a lot line adjustment or lot consolidation shall be processed to ensure the building is on one lot, or documentation shall be provided to verifying that the site currently exists as a single legal lot.
4.     Building records show that the existing structure, which is to accommodate the

CCP21-00054 (DSPO – Corona LLC)                    RE: Preliminary Review of Concept Plans/Location
Page 2

proposed cannabis business, was constructed as a residential garage addition, which was to accommodate an "RV Parking" space, a "Boat Parking" space, and a "Car Parking" space.  The building was not designed or intended to accommodate a commercial business.  The building requires a change of occupancy type, and the site shall be redeveloped accordingly (e.g., vehicle circulation, fire code/access, infrastructure, drainage, parking, etc.).

*Public Works, Traffic Division:*
5.     The driveway on Garfield Avenue is currently constructed to a residential standard. The driveway and on-site drive lanes will need to be reconstructed to a commercial or industrial standard, commensurate with the proposed use, occupancy type and/or zone.

*Building Division:*
6.     The proposed cannabis business shall provide an Accessible Path (ADA) to, into and within the facility.
7.     The proposed Site Plan & Floor Plan need to be drawn with consistent details and dimensions.
8.     Occupancies of the structures shall comply with the California Building Code.  The existing building shall require a change in occupancy type.

*Fire Department:*
9.     General plan check comments: Change of occupancy, rated walls, sprinkler system, etc.
10.    Site egress and ingress, apparatus turn-around and fire hydrants shall be provided as required by Code.
11.    Fire will need to approve a suite exhibit prior to submittal to building
12.    Disclosure to Riverside County Department of Environmental Health for hazardous material and hazardous waste.

**EXHIBIT 2**

- − Planning Division
    - Applications
    - Design Guidelines and Forms
    - General Plan and Zoning Maps
    - + General Plan
    - Historical Markers
    - Landscape Design Guidelines and Forms
    - Planning Quick Guides
    - Projects
    - Proposed Development
    - Specific Plans
    - Sign Programs
    - Zoning
    - Zoning Code

Government » Departments/Divisions » Planning Division »

# GENERAL PLAN AND ZONING MAPS

Font Size: + −   Share & Bookmark   Feedback   🖨 Print

## Zoning

Zoning is a legal control that the city has over land uses and the standards by which land is developed. The land within the city is divided into zones, which serve to separate and regulate the use of land, density, buildings and structures, setbacks, coverage limitations, and height limits. Zone boundaries are illustrated on the official zoning map of the city. The zoning ordinance (CMC, Title 17) and the zoning map are adopted and codified by the City Council. The zoning map is created and maintained by the Community Development Department. The map is used by the public and other agencies to determine the allowable use of specific parcels within city limits.

- Zoning Map Book (August 11, 2014)

## General Plan

By law, all City programs must be consistent with the General Plan including zoning, subdivision regulations, capital improvement programs, specific plans, housing programs, and economic development programs.

- General Plan Map Book (August 11, 2014)

Free viewers are required for some of the attached documents.
They can be downloaded by clicking on the icons below.

     

**EXHIBIT 3**



**EXHIBIT 4**



**EXHIBIT 5**





HOME ON THE SAME BLOCK THAT HAS BEEN PARTIALLY CONVERTED TO INDUSTRIAL

**EXHIBIT 6**



AERIAL VIEW SHOWINIG HOMES THAT HAVE BEEN CONVERTED TO INDUSTRIAL ON THE SAME BLOCK



| LAND USES | Block 01 | Block 01-O | Block 02 | Block 03 |
|---|---|---|---|---|
| Upholstering | P | P | P | P |
| Warehouse and distribution | P | P | P | P |
| **PUBLIC AND QUASI-PUBLIC USES:** | | | | |
| College, business or private school (no riding academies) | P | P | P | NP |
| Churches, not exceeding an overall combined floor area of 10,000 square feet | MCUP | MCUP | MCUP | MCUP |
| Exhibit halls, clubs and lodges | CUP | NP | NP | NP |
| Studio (art, music, dance, gymnastic, martial arts and other uses similar in nature), subject to the parking requirements for trade schools | P | P | P | NP |
| Trade schools | P | P | P | P |
| **MISCELLANEOUS USES:** | | | | |
| Residential | NP | NP | NP | NP |



EXHIBIT 7

## EXCERPT FROM EMAIL

**Jay Eastman**                                                    Aug 2,
                                                                    2021,
                                                                    7:50 PM

to Jamie, me

Good Evening David,

After our early correspondence I initiated research into the three residentially zoned lots
the south side of Railroad Street, west of the Intersection of N. Garfield Avenue and
Railroad Street ("Residential Lots"). As has been discussed in prior e-mails (below),
these three Residential Lots are shown on the City's zoning maps as R-1-7.2, and they
are located within 1,000 feet of buildings at 322 N. Garfield Ave., which is where you
have proposed a commercial cannabis business ("Proposed Location"). As you know, I
have also consulted with the City Attorney on this matter.

Based on our review, research and consultation, we have determined that the City's
original conclusion that the Proposed Location does not satisfy the City's separation
requirements, as set forth in Corona Municipal Code ("CMC") Section 5.36.070, is
correct. This determination is based at least upon the following uncovered facts and
legal authority:

- CMC Section 5.36.070 prohibits a retail storefront commercial cannabis business from being
  located within a 1,000-foot radius, measured from the public entrance of the retailer to the
  exterior boundary of a property in any **residential zone** located within the City's jurisdictional
  boundaries. Notably, the separation requirement is not based upon the General Plan
  designation. The only relevant consideration is whether there is property that is currently zoned
  residential within 1,000 feet of the Proposed Location. Since the Residential Lots are currently
  zoned residential, and are located within 1,000 feet of the proposed public entrance for the
  Proposed Location, the separation requirement set forth in CMC Section 5.36.070 applies.

- **While the City concedes that there is an inconsistency between the General Plan designation
  of Light Industrial and the R-1-7.2** residential designation in the Zoning Code for the Residential
  Lots, there is no legal authority to support your contention that the Zoning
  Map *automatically* changes to be consistent with the General Plan.

- **We appreciate that you have brought the inconsistency to the City's attention. Although I
  have over 20 years of City planning experience working for local government, I am new to the
  City of Corona, and I was unaware of the inconsistency on the Residential Lots.** Given this
  knowledge, we will take action to address the inconsistency within a reasonable time, as
  required.